IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TOBI WILLIAMS,  )
      Plaintiff,  )
         )
      v.  )    Case No. 05 C 6351
         )
COOK COUNTY, JOHN STROGER, in  )
his individual capacity; MARK  )
KILGALLON, in his individual capacity,  )
and JAMES WHIGHAM, in his  )
individual capacity,  )
         )
      Defendants.  )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Tobi Williams filed the present Amended Complaint against Defendants Cook County, Cook County Board President John Stroger, Cook County Director of Human Resources Mark Kilgallon, and Cook County Inspector General James Whigham alleging deprivation of equal protection of the laws pursuant to 42 U.S.C. § 1983 and conspiracy to commit the same pursuant to 42 U.S.C. § 1985(3) for discriminatory treatment based on gender and disability. Before the Court is Defendants' Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part Defendants' motion.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the factual sufficiency. *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001); *see also Cler v. Illinois Educ. Ass'n,* 423 F.3d 726, 729 (7th Cir.

2005) (motion to dismiss challenges complaint's sufficiency). The Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957)). The Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *Centers,* 398 F.3d at 333.

## BACKGROUND

In 1994, Cook County hired Plaintiff Tobi Williams as Director of Special Events of Cook County – a "Shakman-exempt" position.[1] (R. 20-2; Am. Compl. ¶¶ 5, 6.) Williams reported directly to Cook County Board (the "Board") President John Stroger. (*Id*. ¶ 13.)

In December of 2002, Karen Stancik,[2] a Cook County employee who is not named as a Defendant in this lawsuit, purported to create a new department entitled the Department of Public Affairs and Communications to which Williams was to report. (*Id*. ¶ 14.) Because Williams viewed Stancik as her equal regarding employment status, Williams interpreted this change as a demotion. (*Id*.) Williams further alleges that on May 7, 2003, Stroger informed Williams that he was unaware of her new reporting obligations. (*Id*. ¶ 15.) Gerald Nichols,

---

[1] "Shakman-exempt" refers to a consent judgment entered into by the City of Chicago in response to litigation concerning the use of state and local patronage power to coerce political support for candidates for government office. The consent judgment permanently enjoined the City from employing someone unless prior public notice of the opportunity to apply for and be hired for a job had been given with the exception of certain at-will employees. *See Shakman v. Democratic Org. of Cook County*, 310 F.Supp. 1398 (N.D. Ill. 1969); *see also Shakman v. Democratic Org. of Cook County*, No. 69-2145, 1997 WL 223054 (N.D. Ill. April 30, 1997).

[2] Williams gives alternative spellings for the names of various persons, including Stancik (Stanzek). For purposes of this motion, the Court will use the names as they appear in the Amended Complaint.

Stroger's assistant, subsequently informed Williams that she was no longer required to attend Stancik's weekly meetings per Stroger's order. (*Id.* ¶ 17.) Despite this order, Williams alleges that Stroger personally admonished her later that month for failing to attend Stancik's meetings and that Stroger indicated to Williams that any instruction to the contrary had not come from him. (*Id.* ¶ 18.) During this time period, Williams also alleges that Stancik began to verbally harass, threaten, and humiliate her. (*Id.* ¶ 16.) Moreover, Williams alleges that Stancik and the Director of Human Resources, Mark Kilgallon, began to issue notices requiring Williams to attend pre-disciplinary hearings to address her alleged inadequate job performance. (*Id.* ¶ 19.) Meanwhile, in February of 2003, Williams was diagnosed with a heart condition, high-blood pressure, insomnia, and depression. (*Id.* ¶¶ 22, 23.) Williams further alleges that this diagnosis was due to work-related stress that eventually resulted in her going on disability leave beginning on October 2, 2003. (*Id.* ¶ 23.)

On January 14, 2004, the Cook County Inspector General's Office, acting under the direction of Inspector General (the "IG") James Whigham and at the behest of Stroger and Kilgallon, contacted Williams to investigate allegations concerning the improper expenditure of $107.00 to purchase table linens. (*Id.* ¶¶ 25, 28, 48.) The intended recipient of the linens, Cook County Commissioner John Daley's secretary, had allegedly paid for them in November of 2003. (*Id.* ¶ 27.) Williams alleges that the lead investigator conducted a "sham" investigation into the linen purchase because the investigator failed to consider all relevant documents and exculpatory evidence, failed to interview all pertinent witnesses, refused to provide her a copy of the complaint, and violated various Cook County policies and rules governing investigations. (*Id.* ¶ 29.) Whigham nonetheless signed the summary report containing the investigation's findings. (*Id.* ¶ 30.) Pursuant to the investigation, Kilgallon required Williams to submit to a

pre-disciplinary hearing in February of 2004 to contest the three alleged infractions relating to the improper linen purchase. (*Id.* ¶ 33.)  Notwithstanding Williams' claim that as a Shakman-exempt employee she was not subject to such hearings, she attended the hearing. (*Id.* ¶¶ 39, 41, 44.)  Williams alleges that during the hearing, Kilgallon relied on the improper investigation and ignored exculpatory evidence. (*Id.* ¶ 39.)  Pursuant to the hearing, Cook County terminated Williams' employment while she was on disability leave. (*Id.* ¶¶ 25, 41.)

Furthermore, Williams alleges that Nichols, a similarly situated male and non-disabled employee, misappropriated funds for amounts in excess of $107.00 and after which no disciplinary action was taken. (*Id.* ¶¶ 51-54.)  Williams further alleges that Mazek Williams and Earl Bell also committed wrongdoing for which no adverse employment action was taken. (*Id.* ¶ 56.)

On November 7, 2005, Williams filed her original Complaint in federal court seeking to recover for discrimination based on gender and her status as a disabled person under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).  Williams filed her Amended Complaint on February 16, 2006.

## ANALYSIS

### I.  Intra-Corporate Conspiracy Doctrine

First, Williams seeks relief under 42 U.S.C. § 1985(3) alleging that Defendants engaged in a conspiracy for the purpose of depriving her of her rights under the Equal Protection Clause of the Fourteenth Amendment.  Defendants, on the other hand, contend that the intra-corporate conspiracy doctrine bars Williams' Section 1985(3) claim.  The intra-corporate conspiracy doctrine precludes conspiracy claims against members of the same entity acting within the scope of their authority.  *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623, 632-33 (7th Cir. 1999); *Wright v. Illinois Dept. of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir.

1994) (applying the intra-corporate conspiracy doctrine to public entities); *Allen v. City of Chicago*, 828 F.Supp. 543, 564 (N.D. Ill. 1993) (applying the intra-corporate conspiracy doctrine to municipal corporations). "The policy behind the doctrine is to preserve independent decision-making by business entities and their agents free of the pressure that can be generated by allegations of conspiracy." *Tabor v. City of Chicago,* 10 F.Supp.2d 988, 994 (N.D. Ill. 1998). The intra-corporate conspiracy doctrine, however, does not apply in egregious circumstances where employees "are shown to have been motivated solely by personal bias." *Hartman v. Board of Tr. of Cmty Coll. Dist. No. 508,* 4 F.3d 465, 470 (7th Cir. 1993).

Williams offers two alternative theories in opposition to the application of the intra-corporate conspiracy doctrine: (1) Defendants acted outside the scope of their authority; and (2) Defendants are not all members of the same governmental entity. The Court addresses each argument in turn.

**A.     Scope of Authority**

Williams initially argues that because Defendants misused their authority by conducting a pretextual investigation and subsequently subjecting her to a pre-disciplinary hearing to which she was immune as a Shakman-exempt employee, Defendants acted outside the scope of their authority, and thus the intra-corporate conspiracy doctrine does not apply. Williams' allegations of wrongful conduct, however, do not necessarily abrogate the intra-corporate conspiracy doctrine. *See Doe v. Bd. of Educ. of Hononegah Cmty. High Sch. Dist. No. 207,* 833 F.Supp. 1366, 1381-82 (N.D. Ill. 1993). As the district court in *Doe* explained:

> If the measure of the applicability of the intracorporate conspiracy doctrine was keyed to the alleged wrongdoing of corporate officers, it would quickly become a meaningless concept. In every case of conspiracy under section 1985 there are necessarily accusations of wrongful conduct. The test is not the wrongful nature of the conspirators' actions but whether the wrongful conduct was performed

within the scope of the conspirators' official duties.

*Id.* at 1382; *see also Travis v. Gary Cmty Mental Health Ctr., Inc.,* 921 F.2d 108, 110 (7th Cir. 1991) ("managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory").

Here, Defendants' power to conduct the investigation and pre-disciplinary hearings derived from their positions as employees of Cook County. More specifically, Mark Kilgallon, as Director of Human Resources, issued notices requiring Williams to attend pre-disciplinary hearings to address her alleged inadequate job performance and also required Williams to submit to a pre-disciplinary hearing in February of 2004 concerning the linen purchase. James Whigham, in his role as Cook County Inspector General, signed the summary report containing the investigation's findings. In short, if Defendants were not acting within the scope of their authority as Cook County employees, they could not have "harmed" Williams as she alleges. *See Tabor,* 10 F.Supp.2d at 994. In fact, Williams admits that Kilgallon used his position as Director of Human Resources to institute the termination proceedings against her and that unless he used his position with Cook County, he would not have had the ability to do so. (R. 33-1, Pl.'s Resp. to Defs.' Mot. to Dismiss, at 10.) As such, Williams' attempt to bar the application of the intra-corporate conspiracy doctrine based on this argument fails.

B. **Single Government Entity**

Next, Williams contends that Defendants are not members of the same governmental entity. Williams specifically contends that because the IG has the authority to investigate the Board members, the IG's Office is a separate, independent entity from Cook County. In support of her argument, Williams attaches the Cook County Inspector General Ordinance, 98-O-19 (the

6

"Ordinance") to her response brief. (*See* R. 33-2; Ex. to Pl.'s Resp. to Defs.' Mot. to Dismiss). Although Williams relies exclusively on the Ordinance in support of her argument, the Ordinance's establishment clause expressly creates the IG's Office as an entity within the Cook County government. (*See id.*, Section 1.)

Simply put, the Ordinance supports the conclusion that Defendants are members of the same entity, namely, the Cook County government. Therefore, Williams' second argument fails. In light of the foregoing, the Court grants Defendants' Motion to Dismiss as to Williams' Section 1985(3) claim because the intra-corporate conspiracy doctrine bars it.

## II. Qualified Immunity

Williams also brings an equal protection clause claim under 42 U.S.C. § 1983. The individual Defendants contend that they are entitled to qualified immunity because the facts in the Amended Complaint fail to establish that Defendants unreasonably relied on the IG's investigation or acted unreasonably in terminating Williams for misappropriation of funds.

The policies served by qualified immunity compel an early determination as to its application. *See Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."). Dismissal under Rule 12(b)(6) of a Section 1983 action based on qualified immunity, however, is a "delicate matter." *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000). Indeed, because qualified immunity usually depends on the specific facts of a case, dismissal at the pleading stage is often inappropriate, especially in the context of the liberal notice pleading standards. *See Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir. 2001); *Jacobs,* 215 F.3d at 765 n.3 ("plaintiff is not required initially to plead factual allegations that anticipate

7

and overcome a defense of qualified immunity").

To determine qualified immunity in the context of a motion to dismiss, the Court examines whether (1) the complaint adequately alleges facts that, if true, constitute a violation of a constitutional right, and (2) that constitutional right was clearly established at the time of the alleged violation. *Kiddy-Brown v. Blagojevich,* 408 F.3d 346, 353 (7th Cir. 2005). The Court thus turns to the liberal notice pleading standards under Rule 8(a)(2) to discern whether Williams has alleged a constitutional claim.

Viewing the facts in a light most favorable to Williams, she has sufficiently pleaded an equal protection clause claim under Section 1983. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (Rule 8(a)(2) provides that a complaint must include only a short and plain statement showing plaintiff is entitled to relief). Specifically, Williams alleges that she was a member of a protected class, namely, that she was disabled and female; that she was terminated from her employment; and that she was treated differently than similarly situated employees who were not members of the protected class(es), including Gerald Nichols, a non-disabled male who allegedly misappropriate funds and was not terminated. *See Williams v. Seniff,* 342 F.3d 774, 788 (7th Cir. 2003).

Next, the Court must determine whether Williams' equal protection claim was clearly established at the time of the alleged violation in 2004. In short, depriving a person of her employment on the basis of gender is a clear constitutional violation. *See Markham v. White,* 172 F.3d 486, 491 (7th Cir. 1999) ("The fact that arbitrary gender-based discrimination … violates the equal protection clause has been plain in this circuit for almost a decade and a half."). Furthermore, as early as 1971, the United States Supreme Court interpreted the equal protection clause as preventing arbitrary gender-based discrimination. *See Reed v. Reed,* 404

U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971). Accordingly, the alleged constitutional right was clearly established at the time of Williams' termination.

For these reasons, the Court denies Defendants' Motion to Dismiss Williams' Section 1983 claims based on qualified immunity at this stage of the proceedings.

### III. Section 1983 Claim Against Kilgallon

Finally, Defendants contend that Williams cannot sustain her Section 1983 action against Kilgallon because Williams alleged in her Amended Complaint that he lacked the authority to terminate her, and therefore he was not acting "under the color of law." (*See* Am. Compl. ¶ 44.) Section 1983 creates a federal cause of action for "the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution or laws of the United States." *See* 42 U.S.C. § 1983; *Livadas v. Bradshaw,* 512 U.S. 107, 132, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).

The success of Defendants' contention that Kilgallon was not acting under "the color of state law" hinges on the extent to which Kilgallon's actions were a misuse of his authority as opposed to an action bereft of any authority. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1518 (7th Cir. 1990). In *Gibson*, the Seventh Circuit reiterated the long-held proposition that "'[m]isuse of power, *possessed* by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law.'" *Id*. (emphasis in original) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed.2d 1368 (1941)).

As discussed above, Kilgallon allegedly used his position as Director of Human Resources to terminate Williams' employment, despite her additional allegation that he did not have the authority to do so. Kilgallon only had access to the procedures he allegedly used to

9

discriminate against Williams – the pre-disciplinary hearing and investigation – because of his position as Director of Human Resources. Because Williams has sufficiently pleaded that Kilgallon directly participated in the alleged constitutional violation, *see Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003), Defendants' argument that Kilgallon did not have the authority to terminate Williams' employment does not save the day. *See Gibson*, 910 F.2d at 1518 (misuse of authority is action taken under color of state law). Therefore, the Court denies Defendants' Motion to Dismiss Plaintiff's Section 1983 claim against Kilgallon.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Date: June 29, 2006

ENTERED

**AMY J. ST. EVE**
**United States District Court Judge**